UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RACHEL A. BISHOP, M.D.                    CIVIL ACTION NO.

VERSUS                                    JUDGE:

BOARD OF SUPERVISORS OF THE               MAGISTRATE JUDGE:
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL
COLLEGE and OCHSNER LSU HEALTH
SHREVEPORT - ST. MARY MEDICAL
CENTER, L.L.C.

## <u>COMPLAINT</u>

NOW INTO COURT, through undersigned counsel, comes RACHEL A. BISHOP, M.D.

("Plaintiff") who respectfully represents the following:

## <u>JURISDICTION AND VENUE</u>

1.      This Court has original subject matter jurisdiction over Plaintiff's federal claims

pursuant to 28 U.S.C.§ 1331 because the claims asserted herein arise under laws of the United

States and Plaintiff seeks redress for violations of federal laws.  This Court has supplemental

jurisdiction pursuant to 28 U.S.C. § 1367 over related claims in the action arising under Louisiana

law, including claims that involve the joinder of additional parties.

2.      Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district. All of the acts

and / or omissions giving rise to the claims asserted herein occurred in this judicial district.

## <u>PARTIES</u>

3.      Plaintiff Rachel A. Bishop, M.D. ("Plaintiff") initiates this action to redress

violations of Title IX of the Education Amendments Act of 1972 ("Title IX"), Title VII of the Civil

Rights Act of 1964 ("Title VII") and Louisiana laws prohibiting employment discrimination and retaliation committed by the Defendant Board of Supervisors of the Louisiana State University Agricultural and Mechanical College (the "Board" / "Defendant").  Plaintiff also asserts claims under 42 U.S.C. §18116 and claims arising under Louisiana law against Ochsner LSU Health Shreveport – St. Mary Medical Center, L.L.C. ("SMMC") for sex-based discrimination in the form of retaliation taken against her because of her protected conduct.

## PARTIES

4.      Plaintiff Rachel A. Bishop, M.D. is an adult female and citizen of Louisiana residing in the municipality of Shreveport, parish of Caddo. Dr. Bishop is board certified by the American Board of Oral and Maxillofacial Surgery and has fellowship training in cleft and craniofacial surgery, a field in which she actively practices. She maintains both a dental license and medical license in Louisiana and Texas. Dr. Bishop is also certified in Basic Life Support, Advanced Cardiac Life Support, Pediatric Advanced Life Support, and Advanced Trauma Life Support.

5.      Defendants are:

A.      The Board of Supervisors of Louisiana State University Agricultural and Mechanical College (the "Board" or "Defendant"). The Board is the governing body of all colleges and universities within its system, including the university Plaintiff attended, Louisiana State University Health Sciences Center-Shreveport ("LSUHSC-S").

B.      Ochsner LSU Health Shreveport – St. Mary Medical Center, L.L.C., a Louisiana Limited Liability Company ("SMMC") which operates a hospital and surgical center in Shreveport, Louisiana.

## FACTUAL BACKGROUND

6.     Plaintiff was enrolled in a post-doctoral fellowship program at Louisiana State University Medical Center-Shreveport ("LSUHSC-S"/ the "Medical School").     During the program, she was subjected to a sex-based hostile learning environment.  When she joined others in complaining about sex discrimination in the educational setting, she was subjected to retaliatory hostility, suspension then termination of the majority of educational services, the withholding of necessary evaluations, and constructive discharge from the fellowship program.

7.     At all times relevant herein the Board acted through its agents, servants, and employees, each of whom acted in the course and scope of their employment with and for Defendant.

8.     The Defendant Board of Supervisors receives federal funds and uses these funds for programs such as the educational medical fellowship program in which Plaintiff was enrolled at LSUHSC-S.

9.     Plaintiff began her educational training at LSUHSC-S on July 1, 2020, as a Cleft & Craniofacial Fellow.   She worked primarily under the supervision of LSUHSC-S faculty Dr. Jennifer Woerner ("Dr. Woerner").  Dr. Woerner was also the Fellowship Director for the Cleft & Craniofacial Surgery fellowship program in which Plaintiff was enrolled at LSUHSC-S.

10.     Dr. Woerner was the attending physician who supervised most of Dr. Bishop's faculty-supervised surgeries in the fellowship program.     Dr. Bishop also worked under the supervision of attending physician Dr. G.E. Ghali, (male) who was (during part of the relevant time) a Professor at LSUHSC-S, the Program Chair of the Oral and Maxillofacial Surgery ("OMFS") Department, and the Chancellor of the LSU Medical School, Shreveport campus ("LSUHSC-S).

3

11.     Dr. Ghali manifested hostile sexism at his first encounter with Dr. Bishop. On her first day of clinic Dr. Ghali labeled her "too pushy" and "loud" in the presence of other male physicians and told her, "It is going to be a long year training you."

12.     Each time Plaintiff trained with Dr. Ghali the environment was charged with sex-based hostility.  The following occurrences are examples of how Dr. Ghali manifested sex-based hostility toward Plaintiff and other female learners in the educational setting:

a.     He belittled Plaintiff as she presented a patient, criticizing her voice.

b.     He engaged in physical micro-aggressions such as sternly staring at her, tapping her shoulder, poking her in the stomach, and placing a hand on each of her shoulders and squeezing her shoulders together.

c.     He engaged in behaviors and made comments to Plaintiff calculated to communicate his bias against women who were not submissive and did not conform to his patriarchal view of women.

d.     He used sexual metaphors to describe patient encounters, once angrily expressing to residents and fellows that evaluating a patient "Should be like sport fucking.   I want to go in, do what I have to do, and not think about it."

13.     Several male residents in the residency program who trained under Dr. Ghali behaved similarly.  Upper-year male residents bullied lower year female residents.  They belittled them, taunted them, forced them to work unreasonable schedules, and withheld assistance.

14.     Plaintiff and a female resident complained to Dr. Woerner, the Fellowship Program Director, about the sex-based hostility in the program.   Dr. Woerner reported these complaints,

and her own experiences with sex discrimination in the OMFS program to the Board's Title IX office in Baton Rouge, Louisiana.

15.     Thereafter, Plaintiff participated in investigations of sex discrimination in educational programs at LSUHSC-S.  She gave oral statements to investigators about occurrences she had witnessed, and her own experiences of sex-based bias in the educational setting manifested by Dr. Ghali and male resident physicians.

16.     During this time, with Plaintiff present, Dr. Ghali made comments to students and residents about the complaints filed against him and his animus toward those who had complained about him.

17.     At a mandatory meeting of residents and fellows, which Plaintiff attended, Dr. Ghali was the program speaker. He spoke about the ongoing investigation regarding himself that was being conducted and failed to present any educational lecture.  He was very angry, accusatory, and repeatedly challenged the captive audience of residents and fellows to speak up and address him directly if they had any "questions" for him.

18.     A few days later, at a lunch meeting of residents and fellows, and other students, which Plaintiff attended, Dr. Ghali angrily read aloud an entire complaint about him.  He told the assembled learners that he thought some of the content of the complaint identified the complainant. He mentioned that he wanted to know the identity of the complainant and commented to the group that this information was not for retaliation, just for his own knowledge, though implying by his tone and posture that his intent was otherwise. He referred to anonymous complainants as "cowards," an accusation he had made before, concluding with: "That's the kind of crap I have to deal with. It's constant."

19.     Dr. Ghali appeared before the Board of Supervisors at its duly noticed meeting in Baton Rouge, Louisiana, on April 10, 2021.   The subject of Title IX complaints against Dr. Ghali was to be discussed at the Board meeting.     Several Louisiana state senators accompanied Dr. Ghali to the Board meeting and expressed their support of him.

20.     During the meeting the Board suspended the public session to enter executive session.  Dr. Ghali joined the Board members in executive session.   The Louisiana state senators who had accompanied Dr. Ghali to the meeting also attended the executive session, giving them unprecedented private access to the Board and political influence over the Board during its Title IX inquiry of complaints against Dr. Ghali.

21.     Later, Dr. Ghali released a statement saying he "received written notice" that the Title IX investigation was complete and that it "did not find sufficient evidence to support any Title IX concern."  Plaintiff, who was one of the Title IX complainants, never received any report on the status of her complaint and was unaware of any findings.

22.     During this time, at least four female employees at LSUHSC-S filed sex discrimination and retaliation complaints about Dr. Ghali with the Equal Employment Opportunity Commission ("EEEOC") and the Louisiana Commission on Human Rights ("LCHR").

23.     On April 13, 2021, following the filing of the EEOC and LCHR complaints against Dr. Ghali, the Interim President of the Board of Supervisors temporarily removed Dr. Ghali from his position as chancellor of the Shreveport campus, with Dr. Ghali's consent, allowing Dr.  Ghali to continue in all other roles at the University, including medical education and the instruction of medical students, residents, and fellows.

24.     Faculty members vocally supportive of Dr. Ghali began to exclude Plaintiff from student meetings, surgical cases, cleft & craniofacial consults, and discussions.  Dr. Stavan Patel,

LSU OMFS faculty member, discussed information and implemented protocols for the cleft & craniofacial surgical service at a meeting where the Plaintiff was not present. These changes directly affect the Plaintiff's ability to participate in cleft & craniofacial patient care. Dr. Patel also excluded Plaintiff from consults and surgical procedures directly related to her training and education in the cleft & craniofacial fellowship. Dr. Patel and administrators further excluded Dr. Bishop from undergoing the normal semi-annual student evaluations that all other residents and fellows participated in on May 17, 2021, and June 7, 2021.

25.     On May 12, 2021, a low-level assistant vice-chancellor, whose performance as Title IX coordinator had been criticized in the Title IX complaints Dr. Woerner had submitted on behalf of learners, placed Dr. Woerner on administrative leave and removed her from faculty and clinical duties.

26.      Acting Department Chair Dr. David Kim, who had temporarily replaced Dr. Ghali, as Chair, sent an email on May 13, 2021, notifying Dr. Bishop and residents that Dr. Woerner had been placed on leave, banned from campus, and was not to have any communications with learners. Dr. Woerner was the faculty member who supervised the majority of the Plaintiff's surgeries and clinical activities at this time.

27.     On May 12, 2021, Dr. David Kim and other administrators held a meeting of OMFS students to discuss Dr. Woerner's administrative suspension, its effect on the department, and plans for changes to patient care. Though Plaintiff was the learner most harmed by Dr. Woerner's administrative suspension and the planned changes to patient care, she was excluded from this meeting.

28.     Later, Dr. David Kim met with Plaintiff to discuss her future in the fellowship program.  Dr. Kim was unable to provide Plaintiff with any specific plan for the continuation of

Plaintiff's training.  He could not state when, or if, Dr. Woerner might be reinstated.   He had no plan for a cohesive course of study for Dr. Bishop for the upcoming year.  He specifically stated: "obviously this is going to affect your training."

29.    The only training option offered to Dr. Bishop for a second year at LSUHSC-S subjected her to the direct supervision of Dr. Ghali.

30.    Dr. Ghali was aware of Dr. Bishop's Title IX complaints of sex discrimination against him.  He did not provide her with an end-of-year evaluation.  He had made disparaging comments in her presence about those who had complained about him, and he had threatened reprisal.

31.    By this time, even the mere presence of Dr. Ghali caused Dr. Bishop to become apprehensive, tense and anxious.  The fact that the Board could not, or would not, take remedial measures to remove Dr. Ghali from her direct line of supervision was a *de facto* continuation of the sex-based hostile environment Dr. Ghali had created. Consequently, Dr. Bishop was unable to pursue a second year of fellowship, and her studies and her employment at LSUHSC-S ended June 30, 2021.

32.    On August 10, 2021, Dr. Bishop testified in a hearing conducted in federal court on application of Dr. J. Woerner for injunctive relief in aid of the Equal Employment Opportunity Commission's ("EEOC") investigation of Dr. Woerner's Title VII sex discrimination and retaliation charges against the Board.

33.    Dr. Bishop entered private practice in Louisiana on November 12, 2021, working primarily at Shriners Hospitals for Children - Shreveport.

34.    In November 2021, Dr Bishop filed a complaint with the EEOC alleging sex discrimination and retaliation against her former employer, the Board.   A copy of her complaint

of discrimination and retaliation was provided to counsel for LSUHSC-S and the Board. Thus, Dr. Bishop's former employer was aware of her EEOC complaint on or shortly after the date it was filed.   In addition, Dr. Bishop's counsel forwarded a detailed letter outlining the complaints to both counsel for LSUHSC-S and the interim Chancellor and Medical School Dean, Dr. David Lewis.

35.     Shriners Hospitals for Children - Shreveport will cease all surgical procedures, both inpatient and outpatient, starting in the fourth quarter of the 2021-2022 year. Due to this change, Dr. Bishop will only have a clinic at Shriners, and she will have to perform all surgical procedures at another facility. Shriners and Ochsner LSU Health Shreveport – St. Mary Medical Center, L.L.C.  ("SMMC") have been working toward developing specific Shriners' operating room time at SMMC for cleft and craniofacial service.

36.     In anticipation of the closure of Shriners' surgery, and the cooperative endeavor between Shriners and SMMC to have specific Shriners patient operating room time for cleft and craniofacial service at SMMC, Dr. Bishop applied to Ochsner LSU Health Shreveport – St. Mary Medical Center, L.L.C. for privileges to practice oral and maxillofacial surgery there.  Her request for privileges at SMMC encompassed the full scope of her training and qualifications, including cleft and craniofacial surgery.

37.     SMMC is a private hospital.  An outside physician must apply to SMMC for permission to perform surgery and see patients at the SMMC hospital facility.

38.     Privileges at SMMC are made by recommendation of the members of the SMMC Medical Executive Committee ("MEC") to the SMMC medical board.

39.     The members of the SMMC MEC, and most of the members of the SMMC medical staff, are also physicians and surgeons employed by LSUHSC-S.  For example:

a.   The chairman of the SMMC MEC is Dr. Paul Cooper, an associate professor and residency program director at LSUHSC-S.

b.   Dr. David Lewis, who has served as Interim Chancellor of LSUHSC-S since Dr. Ghali stepped down from that position in April 2021, is chairman of the SMMC medical board which controls credentialing and the grant or denial of privileges at SMMC.

40.   While Dr. Bishop's application for privileges was pending at SMMC, Dr. G.E. Ghali retired from public employment and entered private practice.

41.   Using his connections at LSUHSC-S, Dr. Ghali retaliated against Dr. Bishop, who had filed a Title IX sex discrimination claim against him, by influencing LSUHSC-S faculty and administrators to use their positions on hospital privileging committees to delay, limit and restrict the privileges of Dr. Bishop for the purpose of retaliating against her.

42.   SMMC, controlled by the LSUHSC-S physicians who serve on the MEC and SMMC governing board, took actions prejudicial to Bishop, such adverse actions including, but not limited to the following:

a.   unreasonably delaying decisions on Dr. Bishop's request for privileges;

b.   requiring her to prove a higher level of skill, experience and training than they have required of other practitioners who have been granted the scope of privileges Dr. Bishop requested;

c.   treating her differently from similarly situated male practitioners to whom privileges have been granted;

d. discussing Dr. Bishop's charge of sex discrimination while Dr. Bishop's request for privileges was on the agenda for consideration, then removing her request from the agenda and delaying action;

e. disregarding the evaluations and recommendations in favor of granting Dr. Bishop the full scope of privileges she requested submitted by the only two physicians with privileges at SMMC qualified to evaluate Dr. Bishop's qualifications;

f. denying Dr. Bishop the full scope of requested privileges on grounds that she did not meet eligibility requirements for all of the privileges she had requested, though the only two SMMC-privileged physicians qualified to evaluate Dr. Bishop's qualifications informed the MEC that Dr. Bishop is fully eligible and qualified for the full scope of privileges she requested;

g. denying Dr. Bishop the full scope of privileges requested upon the pretext that she had not received a certificate of completion of her fellowship at LSUHSC-S, while SMMC members, acting through their roles as administrators and faculty at LSUHSC-S, simultaneously withheld the certificate;

h. manipulating the privileging process to deny Dr. Bishop any right of appeal under the SMMC bylaws;

i. denying Dr. Bishop her right, under the bylaws, to obtain a copy of all documents, reports, minutes, and other information relied upon by the SMMC MEC to reach a decision regarding her request for privileges.

43.     Most of the correspondence Dr. Bishop received from the SMMC MEC and the SMMC medical board was sent by Dr. David Lewis and Dr. Paul Cooper.

44.     Dr. David Lewis is the chair of the SMMC medical board.  In that capacity, he influences and controls the actions of SMMC, a private entity.

45.     Dr. David Lewis is also the interim chancellor of LSUHSC-S, having replaced Dr. Ghali first when Dr. Ghali was suspended from the position and later when Dr. Ghali resigned from the position.   In his capacity as the interim chancellor of LSUHSC-S, Dr. David Lewis functions as an agent of the Board.  He influences and controls the actions of LSUHSC-S, a public university.

46.     Dr. Paul Cooper is an employee of the Board, an associate professor of medicine at LSUHSC-S and a residency director at LSUHSC-S.  In his capacity as faculty and residency director at LSUHSC-S he is an agent of the Board.

47.     Dr. Paul Cooper is also a member of the SMMC MEC.  In his capacity as a member of the SMMC MEC he functions to control the actions of a private entity that is separate from the Board and LSUHSC-S.

48.     Most, if not all, of the physicians who serve on the MEC at SMMC are also employed by the Board as faculty and / or administrators at LSUHSC-S.  Thus, decisions regarding the admission of physicians to practice at SMMC are controlled by, or heavily influenced by, LSUHSC-S faculty and administration.

49.     The members of the SMMC MEC who acted to deny Dr. Bishop the full scope of privileges she requested informed her that they did so because she had not obtained a certificate of completion of her fellowship at LSUHSC-S.   However, these same persons, acting in their

capacities as physicians and administrators at LSUHSC-S, refused to issue the certificate to Dr. Bishop for discriminatory and retaliatory reasons.

50.     Administrators and the Interim Chancellor have refused to issue Dr. Bishop a certificate of completion for her year of fellowship, despite the fact that her request for a certificate of completion was wholly endorsed by the Fellowship Director and despite the fact that LSUHSC-S had issued one-year certificates of completion for at least four male physicians who either did not contract for a second year of fellowship or who had contracted for a second year but had not completed a second year.

51.     Because of Dr. Bishop's protected conduct, the acting OMFS Department Chair and other administrators at LSUHSC-S will not respond to requests for information about Dr. Bishop's education at LSUHSC-S from other hospital privileging committees and are withholding information and documentation Plaintiff needs to obtain privileges to practice her specialty at other hospitals.

52.     As a result of the above-described acts, Plaintiff has suffered monetary injury, economic loss, and injury to her professional reputation.

53.     Plaintiff has exhausted all procedural and administrative pre-requisites to suit.

### CLAIMS FOR RELIEF

**Count I**

**Title IX of the Education Amendments of 1972 –
Sex Discrimination Claim against Board of Supervisors**

54.     The Defendant Board discriminated against Plaintiff on the basis of her sex in violation of Title IX by requiring her to continue education in a sex-based hostile environment and under the direct supervision of Dr. Ghali, the subject of her Title IX complaints, as a condition of continued academic enrollment at LSUHSC-S.

55.     The Defendant Board discriminated against Plaintiff on the basis of her sex in violation of Title IX by acquiescing to political pressure to quash an investigation of the Title IX complaints against Dr. Ghali.

56.     The Defendant Board discriminated against Plaintiff on the basis of her sex in violation of Title IX by failing to keep Plaintiff informed about her Title IX complaint against Dr. Ghali, not informing Plaintiff of the status of her complaint, suppressing Plaintiff's Title IX complaint against Dr. Ghali, and acquiescing to political pressure to abandon the investigation of Plaintiff's Title IX complaint.

57.     The Defendant Board discriminated against Plaintiff on the basis of her sex in violation of Title IX by constructively discharging her from the fellowship training program.

58.     The Defendant Board discriminated against Plaintiff on the basis of her sex in violation of Title IX by denying her the certificate of completion for which she qualified, ignoring the Fellowship Director's assessment that Plaintiff was fully qualified and despite having issued such certificates to male fellows who had completed only one year of fellowship.

59.     The discriminatory actions taken against Plaintiff by the Board in violation of Title IX, as described above, arise from the student / university relationship between the Plaintiff and the Board and not from the Plaintiff's employment relationship with the Board.

60.     As a result of the Board's discriminatory actions in violation of Title IX, Plaintiff suffered injury to her educational interests, injury to her professional reputation, and economic injury.

61.     Plaintiff seeks and is entitled to receive equitable relief, such as the issuance of the certificate of completion of the fellowship and rehabilitation of her professional reputation.  She

also seeks, and is entitled to recover, compensatory damages, including damages for economic injury, costs and attorneys' fees.

## Count II

### Title IX of the Education Amendments of 1972 - Retaliation Claim against Board of Supervisors

62.     Plaintiff engaged in conduct protected under Title IX.  The acts of protected conduct included, but are not limited to, the following:

a.     Complaining of a sex-based hostile learning environment;

b.     Participating in Title IX investigations and giving statements to Title IX investigators.

63.     Plaintiff suffered adverse actions because of her participation in protected conduct. The adverse actions taken against Plaintiff by the Board's agents and employees in their capacities as faculty, staff, and administrators of an educational institution receiving federal funds, include, but are not limited to, the following:

a.     Withholding of information from Plaintiff about her training;

b.     Excluding Plaintiff from meetings held to discuss the assignments of learners and OMFS faculty to patients and cases;

c.     Constructively discharging Plaintiff from the educational program;

d.     Withholding a certificate of completion of the fellowship, and refusing to accept recommendation and attestation of the Fellowship Director that Plaintiff was fully qualified and had earned certification of successful completion of training;

e.     Withholding a certificate of completion of the fellowship despite having granted certificates to male fellows under similar circumstances;

   f. Interfering with the privileging procedure at SMMC to prevent Plaintiff from obtaining the full scope of privileges for which she was qualified and which she had requested.

   g. Refusing to respond to customary and standard requests for documentation and information about Plaintiff's training at LSUHSC-S submitted by hospital privileging committees of hospitals other than SMMC, preventing Plaintiff from obtaining privileges at other hospitals.

64. The retaliation the Plaintiff suffered was a consequence of her participation in complaints and investigations of alleged violations of Title IX.  As a direct result of these acts of retaliation, Plaintiff has suffered, and will continue to suffer, long-lasting economic injury and injury to her professional reputation.

65. Plaintiff seeks and is entitled to receive equitable relief, such as the issuance of the certificate of completion of the fellowship and rehabilitation of her professional reputation.  She also seeks, and is entitled to recover, compensatory damages, including damages for economic injury, costs and attorneys' fees.

## Count III

### Title VII - 42 U. S. C. §2000e, *et seq.* Sex Discrimination Claim
### Against Board of Supervisors

66. The Defendant Board of Supervisors is an "employer" as that term is defined by Section 701(b).

67. Defendant, acting through its designated faculty at the campus of LSUHSC-S, controlled Plaintiff's work, set her pay, and controlled the terms and conditions of her employment while she was under an employment contract.

68.     Plaintiff was subjected to a sex-based discriminatory working environment during her employment.

69.     Plaintiff complained to her employer about the discriminatory environment and participated in the employer's investigation.

70.     Plaintiff participated in her employer's investigation of sex discrimination and Title VII retaliation complaints brought by female faculty members against Dr. Ghali.

71.     The employer failed to take prompt and effective remedial action to remedy the sex-based hostile environment that Dr. Ghali had created and was perpetuating.

72.     The employer's failure to take effective remedial action and its perpetuation of the discriminatory environment was an intolerable alteration of the terms and conditions of Plaintiff's employment.  She was constructively discharged effective June 30, 2021.

73.     The Board, acting through its agents and employees at LSUHSC-S, also discriminated against Plaintiff on the basis of her sex by denying her a certificate of one year completion of the fellowship program.

74.     The employer had previously granted one-year certificates of completion and/ or made concessions for the purpose of issuing certificates of completion to male fellows.   The refusal to do so for Plaintiff was an act of sex discrimination.

75.     As a consequence of the employer's sex-based discrimination against Plaintiff, she has suffered injury to her professional reputation, loss of income, past and future economic harm, and emotional distress.

76.     Plaintiff seeks remedies available under Title VII, including lost wages, compensatory damages for other injuries, and reimbursement of her costs and attorney's fees.

**Count IV**

**Title VII, 42 U. S. C. §2000e-3(A) Retaliation Claim**
**Against Board of Supervisors**

77.     Plaintiff engaged in the following conduct protected by Title VII:

      a.     She complained of sex discrimination and a hostile working environment;

      b.     She participated in the employer's investigation of complaints of Title IX sex discrimination and the Title VII complaints of others;

      c.     She testified in federal court in an action for injunctive relief to assist the EEOC in its investigation of the sex discrimination and retaliation complaints of another.

78.     The employer was aware of Plaintiff's protected conduct.

79.     The employer retaliated against Plaintiff because of her protected Title VII conduct. The acts of retaliation included, but are not limited to, the following:

      a.     Constructively discharging her from employment;

      b.     Conspiring with SMMC to deny Plaintiff privileges to practice to the full extent of her qualifications;

      c.     Withholding information and documentation necessary for Plaintiff to obtain privileges to practice at SMMC to the full extent of her qualifications;

      d.     Withholding and suppressing information and documentation necessary for Plaintiff to obtain privileges to practice at other hospitals to the full extent of her qualifications;

      e.     Falsely accusing Plaintiff of having "questionable professionalism."

80.     The acts of retaliation have injured Plaintiff's professional reputation and caused her economic injury and emotional distress.

81.     Plaintiff seeks and is entitled to recover from the Board compensatory damages, lost earnings, costs and attorneys' fees under Title VII.

### Count V

### Conspiracy To Retaliate and / or Discriminate Asserted Under La. R.S. 51:2256 Against the Board of Supervisors

82.     The Board is an "employer" as that term is defined by La. R.S. 23:302. The Board employed Plaintiff pursuant to a one-year written contract of employment.

83.     The Board, acting through its faculty and administrators at LSUHSC-S, conspired with SMMC to retaliate and to discriminate against Dr. Bishop because Dr. Bishop had made a charge of discrimination against the Board, participated in investigations, and testified in a proceeding conducted pursuant to Chapter 38 and Chapter 3-A of Title 23 of the Louisiana Revised Statutes.

84.     La. R.S. 51:2256 protects individuals from conspiracy to retaliate or discriminate when the individual has "made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950."

85.     Dr. Bishop engaged in the following activities protected by R.S. 51:2256:

   a.     She filed a charge of discrimination with the EEOC that was dual filed with the Louisiana Commission on Human Rights ("LCHR"), a Chapter 38 Fair Employment Practices Agency;

b.      She assisted in and participated in investigations conducted by her employer; an activity protected under Chapter 3-A of Title 23 of the Louisiana Revised Statutes.

c.      She testified in an investigation, proceeding or hearing in an injunction proceeding conducted by a federal court in furtherance of an EEOC investigation when the EEOC was acting as an agent of the LCHR pursuant to the work sharing agreement between the two agencies.

86.     The Board, acting through its faculty and administrators at LSUHSC-S, conspired with SMMC to discriminate and / or retaliate against Dr. Bishop because of her protected conduct to have Plaintiff treated less favorably in the privileging process than SMMC treated similarly situated applicants who had not engaged in protected conduct.

87.     The Board, acting through its faculty and administrators at LSUHSC-S, conspired with SMMC to discriminate and / or retaliate against Dr. Bishop because of her protected conduct to obstruct the privileging process and to prevent Dr. Bishop from obtaining the full scope of privileges at SMMC for which she was qualified and which she had requested.

88.     The Board, acting through its faculty and administrators at LSUHSC-S, conspired with SMMC to discriminate and / or retaliate against Dr. Bishop and in furtherance of that conspiracy influenced and /or controlled SMMC in the commission of the acts described in paragraph 42, above.

89.     As a result of the conspiracy to discriminate and / or retaliate, Dr. Bishop suffered economic injury and injury to her professional reputation.

90.     Pursuant to the provisions of La. R.S. 51:2263, Dr. Bishop is entitled to full relief, including equitable relief such as reputation rehabilitation, and to the recovery of compensatory

damages, damages for economic injury, costs and attorney's fees from the Board for its violation of La. R.S. 51:2256.

## Count VI

### Conspiracy To Retaliate and / or Discriminate
### Asserted Under La. R.S. 51:2256 Against SMMC

91.     SMMC is an "employer" as that term is defined by La. R.S. 23:302.  Louisiana law does not require that the "employer" subject to this law be an employer of the target of the conspiracy.

92.     SMMC, acting through its Medical Executive Committee ("MEC") and its medical board, members of which are faculty and administrators at LSUHSC-S, conspired with these agents and employees of the Board to aid and abet them in retaliating against Plaintiff because she had engaged in conduct protected by La. R.S. 51:2256.

93.     The acts in furtherance of the conspiracy included, but are not limited to, those described in paragraph 42.

94.     As a result of the conspiracy to discriminate and / or retaliate, Dr. Bishop suffered economic injury and injury to her professional reputation.

95.     Pursuant to the provisions of La. R.S. 51:2264, Dr. Bishop is entitled to full relief, including equitable relief such as reputation rehabilitation, and to the recovery of compensatory damages, damages for economic injury, costs and attorney's fees from SMMC for its violation of La. R.S. 51:2256.

**Count VII**

**La. Civil Code Art. 2315.**
**Claim Against SMMC For Abuse of a Right**

96. SMMC abused its right to grant or deny privileges to physicians seeking to practice at SMMC by conspiring with the Board, acting through its agents and employees at LSUHSC-S, to manipulate the SMMC privileging procedure to Plaintiff's detriment.

97. For no legitimate reason and acting without good faith and in disregard of fundamental fairness, SMMC unreasonably delayed decisions on Plaintiff's request for privileges, manipulated the privileging process, and denied her the full scope of privileges she requested and for which she was fully qualified.

98. SMMC, acquiescing to the influence of those at LSUHSC-S who had motive to discriminate and / or retaliate against Plaintiff, allowed the SMMC privileging procedure to be used for a purpose other than the purpose for which the privileging rights and procedures were granted.

99. As a result of SMMC's abuse of its right to grant or deny privileges to physicians to practice at SMMC, Plaintiff was unreasonably and unfairly denied the full scope of privileges she requested and for which she was qualified.

100. As a result of SMMC's abuse of its privileging right, Plaintiff suffered and continues to suffer injury to her professional reputation.

101. As a result of SMMC's abuse of its privileging right, Plaintiff suffered and continues to suffer serious economic injury.

102. Pursuant to the provisions of La. Civil Code art. 2315, Plaintiff seeks, and is entitled to recovery from SMMC, compensatory damages including damages for economic injury, the cost of reputation rehabilitation, and such equitable relief as may be allowed.

**Count VIII**

**Claim Against SMMC Under La. R.S. 51:2247 and R.S. 51:2264**
**Public Accommodation Discrimination**

103.    La. R.S. 51:2247 declares it a "discriminatory practice" in Louisiana:

"for a person to deny an individual the full and equal enjoyment of the goods, services, Facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in this Chapter, on the grounds of race, creed, color, religion, sex, age, disability, as defined in R.S. 51:2232, or national origin."

104.    A hospital is a place of public accommodation for purposes of La. R.S. 51:2247. Retaliation against a person who has complained of sex discrimination is a form of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171, 125 S.Ct. 1497, 1502, 161 L.Ed.2d 361, 367 (2005)

105.    SMMC denied Plaintiff the full and equal enjoyment of the privilege to practice at SMMC on the grounds of her sex by retaliating against her because she had filed a sex discrimination claim while a fellow at LSUHSC-S and because she had participated in investigations and court proceedings arising from the Title IX and Title VII sex discrimination complaints of others.

106.    As a result of SMMC's sex-based abuse of its privileging right, Plaintiff suffered and continues to suffer injury to her professional reputation.

107.    As a result of SMMC's sex-based abuse of its privileging right, Plaintiff suffered and continues to suffer serious economic injury.

108.    As a result of SMMC's unlawful sex-based discriminatory practice, Plaintiff suffered and will continue to suffer economic injury, and injury to her professional reputation.

109.    Pursuant to the provisions of La. R.S. 2264, Plaintiff seeks and is entitled to recover her actual damages together with her costs and attorneys' fees.

## Count IX

### Claim Against SMMC For Violations of Section 1557 of The Patient Protection and Affordable Care Act ("ACA") 42 U.S.C. § 18116(A)

110.     Section 1557 of the Patient Protection and Affordable Care Act ("ACA") prohibits sex discrimination in any health program or health activity any part of which is receiving federal financial assistance.

111.     The ACA defines a "'health program or activity'' to encompass all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance.

112.     SMMC, a hospital, is principally engaged in the business of providing health care. SMMC receives federal financial assistance for numerous purposes, programs and activities, including its operations and surgical facilities.

113.     As part of its operations, SMMC receives and acts upon requests from physicians and surgeons not associated with LSUHSC-S for privileges or the right to provide their services to patients at SMMC and using SMMC's operating rooms, staff, and facilities.

114.      Plaintiff applied for privileges at SMMC.

115.     Defendant SMMC discriminated against Plaintiff on the basis of her sex and in violation of 42 U.S.C. §18116(a) by engaging in the acts and omissions, including but not limited to those described paragraph 42 and by conspiring with the Board, acting through its agents and employees at LSUHSC-S to retaliate against Plaintiff because she had engaged in activities protected by Title IX.

116.     SMMC discriminated against Plaintiff on the basis of her sex by retaliating against her for prior Title IX protected activity.

117.    The unlawful sex-based discrimination has caused Plaintiff economic injury and injury to her professional reputation.

118.    Plaintiff seeks and is entitled to recover from SMMC under Section 1557 the remedies available under Title IX, including appropriate equitable relief, compensatory damages, damages for economic injury, compensation for injury to her professional reputation and reputation rehabilitation, costs and attorneys' fees.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury of all claims asserted in all counts of this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that her complaint be deemed good and sufficient and that upon the conclusion of all appropriate delays there be judgement entered in her favor granting to her the full relief she seeks under all claims alleged in this Complaint.

Plaintiff further prays for a judgment for actual damages against the Defendant Board and SMMC  including compensatory damages, damages for lost wages and benefits, damages for past and future economic injury, compensation for injury to her professional reputation, and, to the extent available under applicable statutes, equitable relief including expungement of negative comments and statements, expungement of any academic or employment adverse actions and statements, the issuance of appropriate certificates and information about Plaintiff's education and her employment, rehabilitation of Plaintiff's professional reputation,  attorneys' fees and costs as available under relevant statutes and laws, and such other and further relief as this Court may deem appropriate.

Respectfully submitted this 10th day of June 2022,

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
e-mail: ajones@dhw-law.com
e-mail: pjones@dhw-law.com


By:      */s/Pamela R. Jones*_____
         Allison A. Jones, Bar No. 16990
         Pamela R. Jones, Bar No. 19640
         ATTORNEYS FOR PLAINTIFF