UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RACHEL A. BISHOP | CIVIL ACTION NO. 22-1607 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a motion to dismiss, filed by Defendant Ochsner LSU Health Shreveport, *d/b/a* St. Mary Medical Center, L.L.C. ("SMMC") [Record Document 19]. The motion has been fully briefed. For the reasons below, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I.  Background

This case arises out of claims of employment discrimination and retaliation. On July 1, 2020, Plaintiff Rachel Bishop, M.D., ("Dr. Bishop") enrolled in a Cleft & Craniofacial Surgery fellowship program at Louisiana State University Medical Center-Shreveport ("LSUHSC-S"). *See* Record Document 15 at ¶¶ 4, 9. When her fellowship commenced, Dr. Jennifer Woerner ("Dr. Woerner"), the Cleft & Craniofacial Surgery Fellowship Program Director, supervised most of Dr. Bishop's surgeries. *Id.* at ¶ 9-10. Dr. Bishop also worked under the supervision of Dr. G.E. Ghali ("Dr. Ghali"). *Id.* At the time, Dr. Ghali was the Chancellor of the LSUHSC-S Medical School and the Program Chair of the Oral and Maxillofacial Surgery Department. *Id.* at ¶ 10.

Dr. Bishop alleges during their first meeting, Dr. Ghali "manifested hostile sexism" when he described her as "'too pushy' and 'loud' in the presence of other male physicians and told her, '[i]t is going to be a long year training you.'" *Id.* at ¶ 11. Other "sex-based hostilit[ies]" that Dr. Bishop avers to have experienced include: 1) the belittling of her and her voice in front of a patient;

1

2) "physical micro-aggressions such as sternly staring at her, tapping her shoulder, poking in the stomach, and placing a hand on each of her shoulders and squeezing [them][;]" 3) comments about women who do not submit to men; and 4) sexually-charged language, especially when describing interactions with patients.[1] *Id.* at ¶ 12. Dr. Bishop avers that this resulted in upper-level male residents bullying her and other female residents by "taunt[ing] them, forc[ing] them to work unreasonable schedules, and with[holding] assistance." *Id.* at ¶ 13.

Plaintiff avers that she and another female resident complained to Dr. Woerner about Dr. Ghali's actions; Dr. Woerner reported their claims—and her own—to the Title IX Office of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College ("the Board") in Baton Rouge. *Id.* at ¶ 14. Plaintiff maintains that an investigation of these claims commenced, during which time she provided "oral statements to investigators" regarding her own experiences and other incidents she had witnessed. *Id.* at ¶ 15. Plaintiff represents that Dr. Ghali continued to make inappropriate comments and spoke poorly about those who complained against him. *Id.* at ¶¶ 16-18.

Dr. Bishop alleges that after an executive session before the Board, Dr. Ghali "released a statement saying that he 'received written notice' that the Title IX investigation was complete and that it 'did not find sufficient evidence to support any Title IX concern.'" *Id.* at ¶ 21. Plaintiff avers that she was never provided a status update or written notice of the findings of that investigation. *Id.* Plaintiff claims that soon thereafter, Dr. Ghali was "temporarily removed" from his position as Chancellor after four female employees filed sex discrimination and retaliation complaints about him with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana

---

[1] For example, Plaintiff claims that Dr. Ghali once described a patient evaluation as being "like sport fucking. I want to go in, do what I have to do, and not think about it." Record Document 15 at ¶ 12(d).

Commission on Human Rights.[2] *Id.* at ¶ 22. Dr. Bishop alleges that Dr. Ghali's supporters began to exclude her from "student meetings, surgical cases, cleft & craniofacial consults, and discussions." *Id.* at ¶ 24.

Plaintiff represents that Dr. Woerner was placed on administrative leave following the Title IX investigation. *Id.* at ¶ 25. Plaintiff alleges that Dr. David Kim ("Dr. Kim"), Dr. Ghali's temporary replacement, informed her that she was to complete the fellowship program under Dr. Ghali's direct supervision. *Id.* at ¶¶ 28-29. Dr. Bishop claims that Dr. Ghali—who knew that she had participated in the Title IX investigation—did not provide her with a yearly evaluation, continued to make disparaging comments towards her, and threatened to retaliate against her. *Id.* at ¶ 30. On June 30, 2021, Plaintiff maintains that she terminated her studies and employment at LSUHSC-S because she had become "apprehensive, tense[,] and anxious" and was not provided any alternative options for her education. *Id.* at ¶ 31.

On August 10, 2021, Dr. Bishop alleges that she participated in a hearing in federal court regarding Dr. Woerner's application for injunctive relief in connection with her EEOC complaint. *Id.* at ¶ 32. Approximately three months later, Plaintiff entered private practice, working primarily at Shriners Hospitals for Children in Shreveport, Louisiana ("Shriners"). *Id.* at ¶ 33. Around that same time, Dr. Bishop filed a complaint with the EEOC alleging sex discrimination and retaliation against the Board. *Id.* at ¶ 34.

At some point, Plaintiff learned that Shriners would no longer be providing inpatient or outpatient surgeries. *Id.* at ¶ 35. However, to continue providing these services and care to its patients, Shiners developed a partnership with SMMC wherein Shriners's doctors would be able to

---

[2] It is unclear whether Dr. Bishop is including her own complaint when referencing these four EEOC complaints against Dr. Ghali.

3

use the SMMC operating rooms for cleft and craniofacial services. *Id.* Dr. Bishop alleges that she applied for privileges to perform oral and maxillofacial surgery at SMMC. *Id.* at ¶ 36.

Plaintiff maintains that members of the SMMC Medical Executive Committee review requests for privileges and make recommendations to the SMMC medical board. *Id.* at ¶ 38. Plaintiff represents that "most of the members of the SMMC medical staff[] are also physicians and surgeons employed by LSUHSC-S." *Id.* at ¶ 39. Dr. Bishop alleges that Dr. Ghali used his connections at LSUHSC-S to ensure that her request for privileges was delayed, limited, and then denied. *Id.* at ¶¶ 41-42. Plaintiff further alleges that SMMC took a series of prejudicial and adverse actions against her, including: 1) requiring a "higher level of skill, experience, and training" than others who had been granted full privileges; 2) treating her differently than her male counterparts; 3) discussing her sex discrimination complaints during meetings; 4) not considering the recommendations that were made in her favor; 5) imposing requirements for privileges that were not listed in SMMC's bylaws or in its Delineation of Privileges; 6) manipulating the privilege process to prevent her from appealing the Committee's decision; 7) denying her the right to a status update on her pending application; 8) denying her the right to review "all documents, reports, minutes, and other information relied upon" by the Committee in making its recommendation to the Board; and 9) refusing to accept any on-call physicians submitted by her. *Id.* at ¶ 42.

Dr. Bishop asserts a series of state and federal claims against the Board and SMMC. *Id.* at 14-27. Plaintiff brings five claims against SMMC, which include: 1) conspiracy to discriminate and retaliate under Louisiana Revised Statute § 51:2256; 2) abuse of rights under Article 2315 of the Louisiana Civil Code; 3) public accommodation discrimination under Louisiana Revised Statutes §§ 51:2247 and 51:2264; 4) violation of Section 1557 of the Patient Protection and Affordable Care

Act;[3] and 5) civil conspiracy under Article 2324 of the Louisiana Civil Code. *Id.* at 22-27. Plaintiff seeks damages and other equitable relief. *Id.* at 27-28.

SMMC seeks dismissal of all claims brought against it pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Record Document 19 at 1. The Court will address each of Plaintiff's claims below.

## II.  Rule 12(b)(6) Standard

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See id.; In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678-79. A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

---

[3] 42 U.S.C. § 18116(A).

A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. Law and Analysis

#### a. Conspiracy Claim Under Section 51:2256

Defendant seeks dismissal of Plaintiff's conspiracy claim brought under Section 51:2256. Under this provision, it is unlawful for an "employer" to conspire "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful . . . or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing." La. R.S. § 51:2256. According to the statute, an "employer" is defined as a "person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee." La. R.S. § 23:302(2). The statute only applies to those employers who employ "twenty or more employees within this state for each working day in each of twenty or more calendar weeks." *Id.*

In its motion to dismiss, Defendant contends that Plaintiff "has not alleged, and cannot allege, that SMMC was ever her employer," and thus cannot allege facts to establish a legally cognizable conspiracy claim. Record Document 19-1 at 7. Defendant argues that in 2014, the Louisiana Legislature amended Section 51:2256 from providing a cause of action for retaliation against "a person or person" to providing a cause of action against one's "employer." *Id.* at 6 (citing Employment Discrimination—Louisiana Commission on Human Rights, 2014 La. Sess. Law Serv. Act 756 (S.B. 412)). SMMC represents that other district courts have construed this amendment as limiting the statute to only those causes of action brought by an employee against her employer.

6

Record Document 19-1 at 6 (citing *Martin v. Winn-Dixie La., Inc.*, No. 13-CV-682, 2015 WL 1281943, at *7 (M.D. La. Mar. 20, 2015)) ("The amendment of La. R.S. 51:2256 creates a cause of action for retaliation in the case of employees alleging discrimination based on a disability, race, color, religion, sex, national origin, or pregnancy, childbirth, and related medical conditions."); *Sebble v. NAMI New Orleans, Inc.*, No. 17-CV-10387, 2018 WL 929604, at *2 (E.D. La. Feb. 16, 2018) ("to establish a retaliation claim, [p]laintiff must first show that [defendant] was her employer."). In short, Defendant asserts that the Court must dismiss Plaintiff's conspiracy claim because Dr. Bishop is unable to establish an employer/employee relationship between herself and SMMC. *Id.* at 7.

In her opposition brief, Plaintiff argues that the Louisiana Legislature did not intend to restrict the scope of Section 51:2256 to only those causes of action brought by an employee against her employer, but rather to prohibit any employer from discriminating or retaliating against *any* individual. Record Document 21 at 2. She further avers that the statute does not require the "victim of conspiracy to have had a past relationship with the offending employer or to be seeking an employment relationship." *Id.* Moreover, Dr. Bishop argues that the Louisiana Legislature would have used the term "employee" had it intended to limit the causes of action brought under the statute to those arising out of an employer/employee relationship. *Id.* In short, Dr. Bishop contends that she can bring a Section 51:2256 claim against SMMC because SMMC—an employer that provides compensation to its employees to provide its patients with medical services—conspired with LSUHSC-S to discriminate and retaliate against her. *Id.* Plaintiff does not cite to any precedent in which a court has interpreted the statute to cover those causes of action she alleges.

The issue is one of statutory construction. That is, the Court must attempt to discern which group of individuals the Louisiana Legislature intended to protect in enacting Section 51:2256. The

Louisiana Civil Code provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9.

Section 51:2256 incorporates the definition of "employer" as outlined by Louisiana Revised Statute § 23:302(2), which defines an "employer" as an entity that "is *receiving services* from an employee and, in return, *giving compensation of any kind* to an employee." La. R.S. § 51:2256 (citing La. R.S. § 23:302(2)). The term employer has a specific, clear, and unambiguous meaning: an employer is one who gives some type of compensation in return for services rendered. In amending the statute, the Louisiana Legislature limited the causes of action that can be brought to only those brought against an employer, signaling its intent to provide coverage only to those individuals who provide services and receive compensation. In other words, to read this statute as providing coverage outside of the employer/employee relationship would be to disregard the Louisiana Legislature's intent in amending the statute and incorporating this specific statutory definition. The Court cannot read in a broader claim in the face of a narrow statute.

Plaintiff failed to plead a legally cognizable claim under Section 51:2256. The statute has defined the term "employer." Dr. Bishop has not alleged that her relationship with SMMC satisfies this definition. Indeed, Dr. Bishop did not allege that she received compensation, or any other form of benefit in return for the surgical services offered in SMMC's hospital. In the absence of these hallmark signs of an employer relationship, Dr. Bishop is required to plausibly allege some other manner in which her relationship with SMMC satisfies the statute. She has not done so. Because she has been unable to satisfy this burden, her claim must fail.

Accordingly, Defendant's motion to dismiss is **GRANTED**, and Plaintiff's conspiracy claim under Section 51:2256 is **DISMISSED WITH PREJUDICE.**

### b. Abuse of Rights

Defendant seeks dismissal of Dr. Bishop's abuse of rights claim. In her complaint, Plaintiff alleges that SMMC "abused its right to grant or deny privileges to physicians seeking to practice at SMMC by conspiring with the Board . . . to manipulate the SMMC privileging procedure to Plaintiff's detriment." Record Document 15 at ¶ 96.

Under the abuse of rights doctrine, fault can be imposed "upon a party who attempts to exercise a right that he or she legally possesses, with the intention of harming or imposing a detriment upon another." *Walther v. Nat'l Tea Co.*, 848 F.2d 518, 519 (5th Cir. 1988) (citing *Lambert v. Md. Cas. Co.*, 403 So. 2d 739, 755 (La. App. 4 Cir. 1981), *aff'd* 418 So. 2d 553 (La. 1982)). "The doctrine of abuse of rights has been invoked sparingly in Louisiana." *Mass. Mut. Life Ins. Co. v. Nails*, 549 So. 2d 826, 828 (La. 1989) (citing *Ill. Cent. Gulf R. Co. v. Int'l Harvester Co.*, 368 So. 2d 1009, 1014 (La. 1979)). A plaintiff can establish an abuse of rights claim only if one of the following conditions is met:

> (1) if the predominant motive for it was to cause harm;
> (2) if there was no serious or legitimate motive for refusing;
> (3) if the exercise of the right to refuse is against moral rules, good faith, or elementary fairness;
> (4) if the right to refuse is exercised for a purpose other than that for which it is granted.

*Id.* at 828-29 (citing *Truschinger v. Pak*, 513 So. 2d 1151, 1154 (La. 1987)).

In its motion to dismiss, Defendant contends that Dr. Bishop has failed to allege "conduct sufficient to state a claim" because it is "entitled to enforce its academic prerequisites for credentialing a provider to perform highly specialized surgeries on children to ensure public safety." Record Document 19-1 at 9. Conversely, in her opposition brief, Plaintiff alleges that SMMC's purported reason for denying her privileges—that she did not have certification of a completed

9

fellowship—was pretext for retaliation, and further, that SMMC does not enforce this standard uniformly across the board.

The Court finds that Plaintiff has alleged sufficient facts to establish an abuse of rights claim. First, she alleges that SMMC's predominant motive for denying her privileges was to retaliate against her for making a sex discrimination claim against Dr. Ghali. Second, Plaintiff alleges that there was no serious or legitimate motive for denying her privileges—and further—that the motive was pretext for retaliation. Third, Plaintiff alleges that SMMC was not acting fairly or in good faith because it subjected her to a higher educational standard than others who had previously been granted surgical privileges. Taken as true, the Court finds that Dr. Bishop has alleged enough facts to state a legally cognizable abuse of rights claim against SMMC. Thus, Defendant's motion to dismiss is **DENIED**.

### c. Public Accommodation Discrimination Claim

Defendant seeks dismissal of Plaintiff's public accommodation discrimination claim under Sections 51:2247 and 51:2264. In her complaint, Dr. Bishop contends that SMMC retaliated against her by denying her "full and equal enjoyment of the privilege to practice medicine at SMMC and to use SMMC's operating rooms and surgical facilities to treat her patients" because she made a sex discrimination complaint against Dr. Ghali while enrolled in the fellowship program at LSUHSC-S. Record Document 15 at ¶ 105.

In its motion to dismiss, Defendant argues that Dr. Bishop's public accommodation claim should be dismissed because the statute is intended to protect individuals "occupying places of public accommodation" and not "service providers attempting to provide services in those places." Record Document 19-1 at 15. Conversely, in her opposition brief, Plaintiff contends that Louisiana's public accommodation discrimination statute should not be read to "exclude coverage

for a non-employee physician seeking clinical privileges to use the facilities of a government-supported hospital to provide professional healthcare services or perform surgical procedures on patients." Record Document 21 at 10.

Section 51:2264 provides a civil cause of action for any violations of Section 51:2247. *See* La. R.S. § 51:2264. According to Section 51:2247, "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of race, creed, color, religion, sex, age, disability . . . or national origin." La. R.S. § 51:2247. A "place of public accommodation, resort, or amusement" has been defined to include "any place, store, or other establishment . . . which supplies goods or services to the general public." La. R.S. § 51:2232. This includes hospitals. *See Albright v. S. Trace Country Club of Shreveport, Inc.*, No. 2003-C-3413 (La. 7/6/04); 879 So. 2d 121, 127.

To be clear, the issue before the Court is not whether Dr. Bishop has alleged that she falls into one of the statutorily protected categories—race, creed, color, religion, sex, age, disability, or national origin—but rather whether the type of accommodation that she seeks—surgical privileges at a hospital—is covered by the statute. In other words, the Court must determine whether the denial of a doctor's surgical privileges constitutes the denial of her access to public accommodations under Section 51:2247. The Court could not locate any Fifth Circuit or Louisiana Supreme Court precedent directly addressing this issue. Nor has either party cited to any such authority. As such, the Court must turn to additional sources of authority for guidance.

In her opposition to Defendant's motion to dismiss, Plaintiff argues that the Court must analyze her public accommodation discrimination claim under Title II of the Civil Rights Act of

11

1964 ("Title II").[4] Under Title II, "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). In *Semien v. Pizza Hut of America, Inc.*, 204 F.3d 1115, 1115 (5th Cir. 2021), the Fifth Circuit turned to Title II for guidance in analyzing a race discrimination claim brought under Section 51:2247 because it is "substantively similar to Title II."

The Fifth Circuit has also relied upon Title III of the Americans with Disabilities Act of 1990 ("Title III")[5] for guidance in analyzing a Section 51:2247 claim for disability discrimination. *See Smith v. France*, 850 F. App'x 243, 248-49 (5th Cir. 2021). Title III states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title III and Section 51:2247 are also substantively similar in their protections of individuals with disabilities.

The Court was unable to locate any federal statutes substantively similar to Section 51:2247 in the context of sex discrimination from which the Court could find guidance in ruling on Dr. Bishop's public accommodations claim under Section 51:2247. However, the issue before the Court is not whether Dr. Bishop has alleged that she is a member of a protected class; instead, the inquiry centers on whether SMMC's denial of her surgical privileges constitutes the denial of access to a public accommodation. That is, it is not essential that a substantively similar federal statute address

---

[4] 42 U.S.C. § 2000a(a).
[5] 42 U.S.C. § 12182(a).

12

sex discrimination, but rather that it provides guidance as to the types of public accommodations that the statute aims to protect. Considering that the Fifth Circuit has previously relied upon Titles II and III in analyzing Section 51:2247 public accommodation claims, the Court must determine whether there is any precedent or jurisprudence wherein a doctor brought a claim under these federal statutes against a hospital for denying her surgical privileges for a discriminatory reason.

The Court was not able to locate any jurisprudence in which a doctor brought a Title II claim against a hospital for denying her surgical privileges. However, the Third Circuit in *Menkowitz v. Pottstown Memorial Medical Center*, 154 F.3d 113 (3rd Cir. 1998), directly addressed this issue in the Title III context. In *Menkowitz*, an orthopedic surgeon was denied surgical privileges after he was diagnosed with attention deficit disorder. *Id.* at 115. The doctor brought a Title III claim against the hospital, arguing that he was discriminated against when he was denied the opportunity to use the privileges and benefits of the hospital—a public accommodation—to perform surgeries because he had attention deficit disorder. *Id.*

In that case, the Third Circuit looked at the plain language and legislative history of the statute, along with other precedent, to determine whether the doctor could bring a Title III claim against the hospital. *Id.* at 116-121. After examining the issue, the Third Circuit found that:

> [A] medical doctor with staff privileges—one who is not an employee for purposes of Title I—may assert a cause of action under Title III of the ADA as an individual who is denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. Our conclusion is reinforced by several observations. First, we may effectively find no recourse under the ADA for the appellant if we were to hold that [] he has no cause of action under Title III. . . . Second, nothing in the Rehabilitation Act would prevent a physician with staff privileges from asserting a cause of action based on disability discrimination. . . . Finally, the administrative guidance issued by the Justice Department interprets Title III to allow a cause of action for physicians with staff privileges.

*Id.* at 122-123 (internal citations and quotation marks omitted). Thus, the Third Circuit held that a doctor could bring a Title III disability discrimination claim against a hospital for the denial of surgical privileges.

In summary, the Court was unable to locate any Fifth Circuit or Louisiana Supreme Court precedent addressing the issue of whether a doctor can bring a sex discrimination claim under Section 51:2247 against a hospital that denied her surgical privileges. However, the Fifth Circuit has indicated that Titles II and III should be used as guidance in interpreting Section 51:2247 cases because they are substantively similar to Section 51:2247. Therefore, the Court has looked to Titles II and III for guidance in interpreting Dr. Bishop's Section 51:2247 claim and has found the Third Circuit has addressed the denial of hospital privileges in the Title III context.

The Court is persuaded by the Third Circuit's detailed and well-reasoned holding in *Menkowitz* and finds a similar result should be reached for based discrimination claims. Just as the doctor in *Menkowitz*, Dr. Bishop does not bring her public accommodation discrimination claim in the employment discrimination context, but rather as an individual seeking to utilize the privileges of a federally funded medical facility. Also similar to *Menkowitz*, Dr. Bishop has alleged that SMMC's bylaws discuss staff privileges and do not classify surgical privileges as being an employment benefit, but rather a benefit to community doctors as a "community provider." *Id.* at 10-11. Considering the Third Circuit's holding in *Menkowitz,* the Court finds that Section 51:2247 covers discrimination claims in the context of a doctor who is seeking surgical privileges. As such, Dr. Bishop has brought a legally cognizable claim against SMMC under Sections 51:2247 and 51:2264. Thus, Defendant's motion to dismiss is **DENIED**.

### d. Section 1557 Claim

Defendant seeks dismissal of Plaintiff's claim brought under Section 1557 of the Patient Protection and Affordable Care Act ("ACA"). In her complaint, Plaintiff claims that Defendant discriminated and conspired to retaliate against her, and as such, she is entitled to relief under Section 1557. Section 1557 states that:

> [A]n individual shall not, on the ground prohibited under [T]itle VI of the Civil Rights Act of 1964 [. . .], [T]itle IX of the Education Amendments of 1972 [. . .], the Age Discrimination Act of 1975 [. . .], or [S]ection 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). . . .

42 U.S.C. § 18116(a). The issue before the Court is a matter of statutory interpretation. In other words, the Court is tasked with determining whether the denial of surgical privileges by a hospital constitutes exclusion from participation in a health program or activity under Section 1557. For the reasons enumerated below, the Court finds that neither party has adequately addressed this issue in their briefs.

The Court will turn first to Defendant's motion to dismiss. In its motion, Defendant does not attempt to interpret the statute, nor does it engage in any of the typical canons of construction in support of its claims. Instead, Defendant argues that Dr. Bishop is "not within the class of plaintiffs protected by the nondiscrimination provisions of the ACA." *Id.* Record Document 19-1 at 12. Specifically, Defendant contends that "[c]laims for recovery under the nondiscrimination provisions of the ACA are brought by or on behalf of patients alleging they have been discriminated against by a healthcare provider on the basis of race, age, sex, and/or disability." *Id.* Along the same vein, SMMC argues that Fifth Circuit precedent provides that Section 1557 only protects individuals from discrimination during the "provision of health care," and Dr. Bishop was not

15

seeking the provision of health care, but rather to be the provider of health care. *Id.* (quoting *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021); *Kim v. HCA Healthcare, Inc.,* No. 20-CV-154, 2021 WL 5281599, at *2 (N.D. Tex. Nov. 12, 2021)).

Defendant was not able to identify a factually similar case brought under Section 1557—and further, could only locate cases where the plaintiff was a patient/patient's representative bringing a discrimination claim against a healthcare provider. However, just because Defendant could not locate a case on point does not necessarily mean that a doctor could not sue a hospital under the statute.[6]

Turning now to Plaintiff's opposition to Defendant's motion to dismiss, Plaintiff argues that the plain language of the ACA supports her assertion that Section 1557 extends its protections against discrimination to "non-employee physicians." Record Document 21 at 10. Plaintiff contends that the term "individual" should be interpreted as "of the species homo sapiens," and that the term "health care program or activity" should be interpreted to "encompass[] <u>all of the operations</u> of entities principally engaged in the business of providing healthcare . . . ." *Id.* at 10-11 (citations omitted) (emphasis in original). She then cites to provisions of the Louisiana Administrative Code to further clarify how the term "operations" should be interpreted. However, Plaintiff does not cite to any authority or provide any substantive analysis in support of these assertions. In other words, Dr. Bishop fails to enunciate why this Court should rely upon the

---

[6] Defendant also advances an argument that:
> Section 1557 of the ACA is not limited to students at universities, but the student in the Title IX context is directly akin to the patient receiving healthcare services in the ACA context, while a provider of medical services (or individual seeking to provide medical services) is akin to a non-student employee, for whom Title IX recognizes no right of action.

Record Document 21 at 13. However, SMMC advances no authority or additional legal analysis in support of this assertion.

16

definitions that she sets forth in her opposition brief. Additionally, she fails to articulate the relevance of the Louisiana Administrative Code to the construction of Section 1557. Ultimately, Plaintiff fails to engage in any meaningful interpretation of Section 1557 or utilize any of the typical canons of construction required for statutory interpretation.

In summary, neither party has adequately briefed this issue. As such, Defendant's motion to dismiss must be **DENIED**.

### e. Civil Conspiracy Under Article 2324

In her complaint, Plaintiff brings a civil conspiracy claim against SMMC, arguing that "[i]n the event it is determined by a judge or jury that the Board is liable to Plaintiff for damages caused by or arising from any act of discrimination or retaliation alleged against the Board" in violation of Titles VII and IX or for conspiracy under Section 51:2256, then "SMMC is also liable *in solido* with the Board for all damages caused by those acts." Record Document 15 at ¶ 122. Defendant seeks dismissal of this claim.

Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." La. Civ. Code art. 2324(A). In order to prove a conspiracy, a plaintiff must establish that: (1) there was an agreement to commit an illegal or tortious act; (2) the act was actually committed; (3) the act resulted in the plaintiff's injury; and (4) there was an agreement as to the intended outcome or result. *Jeff Mercer, LLC v. State through Dep't of Transp. & Dev.*, 51,371 (La. App. 2 Cir. 6/7/17); 222 So. 3d 1017, 1024. "The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La. App. 4 Cir. 10/1/14); 151 So. 3d 670, 676.

In fact, civil conspiracy "by itself it not an actionable claim under Louisiana law." *Crutcher-Tufts Res., Inc. v. Tufts*, 2007-1556 (La. App. 4 Cir. 9/17/08); 992 So. 2d 1091, 1094. "Civil conspiracy is not a substantive tort in Louisiana; the concept is relevant only to the distribution of quantum after liability is determined." *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10); 40 So. 3d 394, 408. "The actionable element of a claim of conspiracy pursuant to Article 2324 pertains to loss distribution and not substantive liability." *Wooley v. Lucksinger*, 2006-1140 (La. App. 1 Cir. 12/30/08); 14 So. 3d 311, 403, *rev'd in part on other grounds*, 2009-0571 (La. 4/1/11); 61 So. 3d 507.

Within a conspiracy, each actor is not required to commit the underlying illegal or tortious act. Rather, it is the agreement to commit those acts that makes one liable in a conspiracy, even if he did not perform the violative act(s) himself. That is, each actor need not be independently responsible for the commission of the underlying tort. *See Currier v. Entergy Servs., Inc.*, No. 11-2208, 2014 WL 4450360, *2 (E.D. La. Sept. 10, 2014) ("[N]othing in Article 2324 or the case literature requires that each co-conspirator equally participate in, let alone wholly commit, each element of the underlying intentional tort."); *see also Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557-58 (5th Cir. 1995) (explaining that because there was a stipulation that one party was liable for conversion of proceeds, the court did not need to determine whether the co-conspirator defendant was also liable for conversion; rather, it need only decide whether that defendant conspired with the guilty party to convert the funds).

In its motion to dismiss, Defendant contends that "it would be inappropriate to apply a civil conspiracy theory of damages" against SMMC because Dr. Bishop did not allege that both the Board and SMMC violated her rights under Titles VII and IX. But Dr. Bishop did not need to bring mirror Title VII and IX claims against both Defendants in order to bring a civil conspiracy claim

18

under Article 2324. Instead, as the jurisprudence makes clear, Dr. Bishop may sue one party for the substantive tort, yet lodge a conspiracy claim against both parties based on a conspiracy to carry out the underlying tortious act. Here, despite bringing Title VII and IX claims solely against the Board, Dr. Bishop nonetheless argues that the Board and SMMC conspired to retaliate against her. *See* Record Document 15 at ¶ 66, 79, 73. At this stage of litigation, this is all that is required. In short, Defendant has alleged a legally cognizable claim against SMMC under Article 2324.

Accordingly, Defendant's motion to dismiss is **DENIED**.

### IV.     Conclusion

Based on the foregoing reasons, Defendant's motion to dismiss [Record Document 19] is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion is **GRANTED** with respect to Plaintiff's conspiracy claim under Section 51:2256. That claim is **DISMISSED WITH PREJUDICE**. Defendant's motion to dismiss is **DENIED** regarding Plaintiff's abuse of rights claim under Article 2315; her public accommodation discrimination claim under Sections 51:2247 and 51:2264; her Section 1557 claim; and her civil conspiracy claim under Article 2324.

**THUS DONE AND SIGNED** this 30th day of September, 2023.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE