UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RACHEL A. BISHOP, M.D. | CIVIL ACTION NO. 5:22-CV-01607 |
| VERSUS | SENIOR JUDGE ELIZABETH E. FOOTE |
| BOARD OF SUPERVISORS OF THE LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE and OCHSNER LSU HEALTH SHREVEPORT - ST. MARY MEDICAL CENTER, L.L.C. | MAG. JUDGE MARK L. HORNSBY |

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL DISCOVERY

Rachel A. Bishop, M.D. ("Dr. Bishop") respectfully requests that Defendant Ochsner LSU Health Shreveport – St. Mary Medical Center, L.L.C. ("SMMC") be ordered to provide complete responses to Plaintiff's written discovery requests. Specifically, Dr. Bishop seeks full and complete responses to the First Set of Document Requests and Interrogatories propounded to SMMC on May 30, 2023, a copy of which is attached hereto and made a part hereof as Exhibit "A."

    I.    <u>Factual and Procedural Background</u>

Dr. Bishop was enrolled in the Clef & Craniofacial Surgery fellowship at Louisiana State University Medical Center-Shreveport ("LSUHSC-S" / "University"). During her fellowship, she experienced and witnessed sex-based hostility generated and accommodated by the male Program Chair, who was also Chancellor of the University.

Plaintiff complained of discrimination and participated in a Title IX investigation conducted by the Title IX Office of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College ("the Board") into her own complaints of sex discrimination, and the complaints of her fellowship Director, Dr. Jennifer Woerner. When an administrator at LSUHSC-S ordered Dr. Woerner to leave campus, with no stated return to work date, Dr. Bishop was provided no option to continue in the program except under the direction of the male Program Director who had refused to provide her with a yearly evaluation, continued to make disparaging and intimidating comments to her, and who had threatened to retaliate against her. Finding her situation untenable and the working environment so intolerable that no reasonable person could be expected to work in the same, Dr. Bishop was constructively discharged from LSUHSC-S and entered private practice. Thereafter, Dr. Bishop testified in federal court on behalf of Dr. Woerner during an injunction hearing detailing her own experiences as a fellow in the OMFS fellowship program and the chilling effect of Dr. Woerner's removal.

Dr. Bishop's private practice revolved primarily around Shriners Hospital for Children in Shreveport, Louisiana ("Shriners"). However, Shriners discontinued offering surgeries at its facility and partnered with SMMC pursuant to an agreement wherein Shriner's doctors would use the SMMC operating facilities for cleft and craniofacial services. To continue serving her patients, Dr. Bishop applied to SMMC for privileges to perform cleft and craniofacial and oral and maxillo facial surgery at SMMC.

SMMC's process for evaluating a physician's application for privileges to practice at SMMC involves review by SMMC's Medical Executive Committee ("MEC"), which makes recommendations to the SMMC medical board. As SMMC has an affiliation with LSUHSC-S, most of its medical staff and MEC members are also physicians and surgeons employed by the

Board and working at LSUHSC-S, a Board-governed university. Consequently, SMMC, acting through MEC members influenced by the (now former) Chancellor who had been accused of harassing Dr. Bishop, retaliated against Plaintiff by undertaking a series of prejudicial acts and omissions, including the following:

a. unreasonably delaying decisions on Dr. Bishop's request for privileges;

b. requiring her to prove a higher level of skill, experience and training than they have required of other practitioners who have been granted the scope of privileges Dr. Bishop requested;

c. treating her differently from similarly situated male practitioners to whom privileges have been granted;

d. discussing Dr. Bishop's charge of sex discrimination while Dr. Bishop's request for privileges was on the agenda for consideration, then removing her request from the agenda and delaying action;

e. disregarding the evaluations and recommendations in favor of granting Dr. Bishop the full scope of privileges she requested submitted by the only two physicians with privileges at SMMC qualified to evaluate Dr. Bishop's qualifications;

f. denying Dr. Bishop the full scope of requested privileges on grounds that she did not meet eligibility requirements for all of the privileges she had requested, though the only two SMMC-privileged physicians qualified to evaluate Dr. Bishop's qualifications informed the MEC that Dr. Bishop is fully eligible and qualified for the full scope of privileges she requested;

g. denying Dr. Bishop the full scope of privileges requested upon the pretext that she had not received a certificate of completion of her fellowship at LSUHSC-S, while SMMC members, acting through their roles as administrators and faculty at LSUHSC-S, simultaneously withheld the certificate;

h. denying Dr. Bishop privileges to perform craniofacial surgery by imposing upon Dr. Bishop privileging requirements not listed in SMMC's Bylaws and not listed in SMMC's delineation of privileges (DOP) for craniofacial surgery credentialing;

i. ignoring the fact that Dr. Bishop was fully qualified for all privileges she requested and insisting that Dr. Bishop satisfy "waiver" requirements to obtain the full scope of privileges she requested, and for which she was

3

    qualified, and then denying full privileges for reasons that are a pretext for discrimination and retaliation.

  j. manipulating the privileging process to deny Dr. Bishop any right of appeal under the SMMC bylaws;

  k. denying Dr. Bishop her right, under the bylaws, to receive updates regarding the status of her application for clinical privileges;

  l. denying Dr. Bishop her right, under the bylaws, to review all documents, reports, minutes, and other information relied upon by the SMMC MEC to reach a decision regarding her request for privileges;

  m. acting contrary to its Bylaws by allowing Dr. Lewis to participate and vote in all aspects of the privileging process involving Dr. Bishop, including the signing of the final decision on Dr. Bishop's request for craniofacial privileges, despite Dr. Lewis' manifest conflict of interest;

  n. refusing to accept the "on call" or "back up" physicians submitted by Plaintiff and requiring her to be available 24/7 without back up for every patient she admits;

  o. accusing Dr. Bishop of being unprofessional because she objected to sex discrimination and retaliatory bias.

Dr. Bishop sued SMMC, asserting the following claims: (1) conspiracy to discriminate and retaliate under La. R.S. 51:2256; (2) abuse of rights under Civil Code art. 2315; (3) public accommodation discrimination under La. R.S. 51:2247 and 51:2264; (4) violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116(A); and (5) civil conspiracy under La. Civil Code art. 2324.

  SMMC moved to dismiss Dr. Bishop's amended complaint. R. 19. While the motion to dismiss was pending, Dr. Bishop served written discovery requests upon SSMC on May 30, 2023, a copy of which is attached hereto as Exhibit A.

  On June 29, 2023, SMMC submitted the following objection to all of Plaintiff's discovery requests:

4

> Ochsner objects to this Request as seeking documents that are protected from discovery by the privilege set forth in La. R.S. § 13:3715.3, which provides that "all records, notes, data, studies, analyses, exhibits and proceedings of...[any] medical organization peer review committee...shall be confidential wherever located and shall be used by such committee and the members thereof only in the exercise of the proper functions of the committee and shall not be available for discovery or court subpoena regardless of where located ...." Ochsner further objects that discovery is premature, as Ochsner's Motion to Dismiss all claims remains pending, and it is impossible to assess the relevance and proportionality of requested documents without knowledge of what claims (if any) will remain against Ochsner.

This Court issued its ruling on Ochsner's Motion to Dismiss on September 30, 2023, granting the motion as to Dr. Bishop's retaliation claim under La. R.S. 51:2256, but denying the motion as to all other claims. R. 38. On October 16, 2023, Plaintiff's counsel wrote to Defendant's counsel asking Defendant to respond to discovery, citing case law holding that the Defendant's objections could not apply to Plaintiff's claims of sex discrimination and retaliation, and asking Defendant to provide its initial disclosures. Defendant also has not answered the Amended Complaint. In a series of subsequent email communications, attached hereto and made a part hereof as Exhibit "B," SMMC's counsel agreed to provide disclosures and an answer by November 10. However, the parties were unable to resolve the dispute regarding discovery responses, necessitating this motion to compel.

II.    <u>Law and Argument</u>

The Federal Rules of Civil Procedure define the scope of permissible discovery as follows:

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" Fed. R. CIV. Pro. 26(b)(1).

See *Hernandez v. Results Staffing, Inc.* 907 F. 3d 354, 361 (5th Circ. 2018). Discovery is not limited to admissible evidence, "but includes anything reasonably calculated to lead to the discovery of admissible evidence." *Coughlin v. Lee*, 946 F. 2d 1152, 1159 (5th Cir. 1991) (internal quotations omitted). A party seeking discovery may move for an order compelling production against another party when the latter has failed to produce documents. See Fed. R. CIV. Pro. 37(a)(3)(B).

Dr. Bishop's document requests and interrogatories to SMMC seek documents (her privilege file records primarily) and information pertaining to how her privilege application was processed, how her qualifications were evaluated, and why she was denied the full scope of privileges she requested. The documents and information sought are relevant to Dr. Bishop's claims that she was discriminated against on the basis of her sex (retaliation) in violation of Title IX and Section 1557 of the ACA, and to her claims asserted under Louisiana law that SMMC abused its rights and conspired with LSUHSC-S physicians to deny her full privileges in retaliation for her complaints of sex discrimination.

Defendant has refused to respond to Plaintiff's discovery, asserting that the information and documents sought are privileged and protected from disclosure under La. R.S. 13:3715.3, a statute that does not, by its own express terms, apply to Plaintiff's state law claims and cannot, as a matter of law, apply to Plaintiff's federal law claim.

"Privileges are strongly disfavored in federal practice." *Am. Civil Liberties Union, Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981), citing *United States v. Nixon*, 1974, 418 U.S. 683, 710, 94 S. Ct. 3090, 3108, 41 L. Ed. 2d 1039. Thus, any privilege "must be strictly construed." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990) (quotations omitted). "A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re*

6

*Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). It must "make the claim expressly" and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. Rule Civ. Proc. R 26.

The starting point for analysis of privilege in federal court is Federal Rule of Evidence 501, which provides as follows:

> "The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
>
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

In this case, the Plaintiff has asserted federal law claims and supplemental state law claims. Neither the United States Supreme Court, nor the Fifth Circuit has determined whether, under these circumstances, federal common law of privilege applies to all claims, or whether the existence of a privilege is determined by federal common law for the federal claim and state law for the state law claim. See *Guzman v. Mem'l Hermann Hosp. Sys.*, 2009 U.S. Dist. LEXIS 13336, at *8 (S.D. Tex. Feb. 20, 2009). The prevailing approach among district courts in the Fifth Circuit has been to apply federal law of privilege to all claims in the litigation when the allegedly privileged information applies to the federal law claim and also to supplemental state law claims. See *Robertson v. Neuromedical Ctr.*, 169 F.R.D. 80, 82-83 (M.D. La. 1996) and *Belcher v. Lopinto*, 2019 U.S. Dist. LEXIS 237948, at *10 (E.D. La. Sep. 16, 2019) and cases cited therein. As shown below, there is no federal common law peer review privilege, and in a case involving

discrimination, it would not be appropriate to expand the common law of privilege by adapting or incorporating the Louisiana statute.

### A. No Peer Review Privilege under Federal Common Law

The discovery Plaintiff seeks is relevant to her Title IX retaliation claim and her state law claims. All of her claims arise from the defendant's refusal to grant her the full scope of privileges she sought, and for which she claims she was qualified. The peer review records are relevant to all of Plaintiff's claims.

There is no privilege under federal common law that permits SMMC to withhold discovery from Plaintiff relevant to Plaintiff's claims of sex discrimination (retaliation) under Title IX and Section 1557 of the ACA. In *Univ. of Pa. v. EEOC*, 493 U.S. 182, 193, 110 S.Ct. 577, 584, 107 L.Ed.2d 571, 584 (1990), the United States Supreme court held that as to a dispute between the university and its faculty member, no evidentiary privilege applied to prevent disclosure of the peer review materials in an EEOC investigation. The Court stated, "[I]f there is a 'smoking gun' to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files." The same rationale applies to claims of discrimination and retaliation in the privileging process brought by non-employee physicians against a hospital. The hospital's records of its review and decisions on Dr. Bishop's application, the process by which her qualifications were reviewed, the identities of the persons involved, the medical executive committee's agendas, minutes and other records sought by Plaintiff are the most likely sources of evidence pertaining to her complaint that she was denied full privileges in retaliation for her Title IX claim and other protected conduct.

Other courts that have considered the issue have firmly rejected any federal common law privilege that would allow a hospital to conceal evidence of discrimination. In *Virmani v. Novant*

*Health, Inc.*, 259 F. 3d 284, 293 (4th Circ. 2001) the Fourth Circuit stated, "We hold that the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review materials. Therefore, we decline to recognize such a privilege." See also See also *Adkins v. Christie*, 488 F.3d 1324 (11th Cir. 2007) (" Balancing the interests to be derived from recognizing the privilege against the interest of furthering the discovery of probative and relevant evidence to root out invidious discrimination, we decline to recognize the privilege"); *LeMasters v. Christ Hosp.*, 791 F. Supp. 188, 191 (S.D. Ohio 1991) ("We conclude only that a physician alleging that a health care facility discriminated against her is entitled to discovery of the peer review proceedings needed to prove her claim" ); also *Rdzanek v. Hosp. Serv. Dist. # 3*, 2003 U.S. Dist. LEXIS 19336, at *9 (E.D. La. Oct. 29, 2003) and cases cited therein.

    B. <u>The State Law Privilege should not be applied.</u>

  This is not a situation in which the federal common law of privilege should be expanded by adaptation or incorporation of a state privilege statute. The United States Supreme Court clearly rejected a federal peer review privilege in *Univ. of Pa. v. EEOC*, 493 U.S. 182 (1982). Thus, it would not be appropriate to incorporate or adapt Louisiana's peer review privilege into federal common law.

  However, even if the state law privilege could apply to Plaintiff's state law claims, the privilege cited by the Defendant does not prohibit disclosure when the records and other peer review information are being sought in the context of a controversy <u>between</u> a hospital and a physician involving any peer review records or privileging action adversely affecting the physician. La. R.S. 13:3715.3 (A)(2), cited by SMMC in support of its objection to production of documents, protects peer review records from disclosure to patients and third parties. The statute

9

does not prohibit disclosure to the physician and contains an express exception authorizing disclosure by the hospital directly to the physician of any "records forming the basis of any decision adverse to the physician." The statutory exception to confidentiality provides that the records are not available for discovery or court subpoena "<u>except</u> in any proceedings affecting the hospital staff privileges of a physician . . ." in which case, "the records forming the basis of any decision adverse to the physician . . . may be obtained by the physician only." [emphasis added]. SMMC denied Plaintiff the full scope of privileges she sought. This was a decision adverse to the Plaintiff. SMMC cannot rely upon this statute to evade production of the records forming the basis of any decision adverse to Plaintiff, as sought in Plaintiff's discovery responses.

## CONCLUSION

Defendant's objections to Plaintiff's discovery requests cannot be sustained. Plaintiff seeks peer review records and other information relevant to her claims of discrimination and retaliation. The Defendant should be ordered to produce documents responsive to the Plaintiff's discovery requests and to answer Plaintiff's Interrogatories.

Respectfully submitted this 8th day of November, 2023

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
e-mail: ajones@dhw-law.com
e-mail: pjones@dhw-law.com

By: /s/Pamela R. Jones
Allison A. Jones, Bar No. 16990
Pamela R. Jones, Bar No. 19640

ATTORNEYS FOR PLAINTIFF